A08A1354. DELSON et al. v. GEORGIA DEPARTMENT OF
TRANSPORTATION.
(671 SE2d 190)

MILLER, Judge.

After Crisanto and Delores Delson and their minor daughter, Dorthea Delson, were killed in an automobile accident, the couple's surviving children and the representative of the decedents' estates brought this wrongful death action against the Georgia Department of Transportation (the "Department"). The jury returned a verdict for the Department, and appellants, the plaintiffs below, now appeal from the denial of their motion for a new trial, arguing that the jury's verdict for the Department is contrary to law and the evidence. Appellants further contend that the trial court erred by (1) failing to instruct the jury that if Crisanto Delson's intervening negligence was foreseeable, the Department's negligence would not be too remote to constitute a proximate cause of the accident, (2) instructing the jury regarding the Department's position that Crisanto Delson's negligence was the sole proximate cause of the accident, and (3) instructing the jury on concurrent negligence. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Ferman v. Bailey*, 292 Ga. App. 288, 290 (2) (664 SE2d 285) (2008)), the record shows that on the afternoon of July 21, 1995, the Delsons were traveling south through Cherokee County in the right-hand lane of Interstate 75 ("I-75"). Crisanto Delson was driving, and traffic volume was normal, with traffic moving at about 60 or 70 miles per hour. Weather and visibility were good, and the pavement was dry.

As the Delsons approached the Priest Road overpass, drivers following their car saw it veer or drift to the left across multiple lanes of traffic. The Delsons' vehicle ran off the road at a gradual angle, traversed the median, and hit the guardrail bordering the left lane of I-75 North. The Delsons' vehicle launched into the air and landed on top of a northbound car. The Delsons died as a result of the collision.

Witnesses saw no indication that Crisanto Delson attempted to straighten or maneuver the car before it collided with the guardrail, nor did they see evidence that he attempted to brake. Further, witnesses saw nothing wrong with the Delson vehicle or any other apparent reason the vehicle veered off the road.

Appellants filed suit against the Department, alleging that the collision resulted from the Department's negligence in the design and construction of a highway improvement project in the area where the accident occurred. Appellants alleged that the relevant project designs failed to comply with applicable engineering and design standards and that the contractors hired to perform the work failed to properly grade the shoulder along the left lane of I-75 North and to properly slope the angle of the median abutting the shoulder.[1] Appellants asserted claims for professional negligence, negligent construction, negligent supervision, and nuisance. Following a trial, the jury returned a verdict for the Department on all claims.[2]

1. In their first and second enumerations of error, appellants assert the "general grounds," challenging the sufficiency of the evidence. Finding that the jury's verdict is supported by the evidence, we reject these enumerations. *Trust Assoc. v. Snead*, 253 Ga. App. 475, 478 (2) (a) (559 SE2d 502) (2002) ("Where there exists some evidence to support the verdict, then the verdict should not be disturbed.") (citation omitted).

Appellants contend that the Department presented "no evidence" that would allow the jury to find that the Department was not negligent or that Crisanto Delson's negligence was an unforeseeable intervening cause of the collision, which absolved the Department of liability. To the contrary, the jury heard conflicting evidence on these issues and was authorized to resolve them in the Department's favor. *Stubbs v. Harmon*, 226 Ga. App. 631, 632 (1) (487 SE2d 91) (1997) ("It is the function of the jury to resolve conflict[s] in [the] testimony.") (citation omitted).

(a) The parties' experts offered conflicting testimony about whether the Department violated any applicable standard of care. Appellants tendered Herman Hill as an expert in highway safety standards. Hill's single criticism of the Department related to the slope of the median adjoining the shoulder along I-75 North. Hill testified that the guardrail involved in the collision was installed in connection with the highway improvement project. He explained that for a guardrail to function properly, there must be a relatively flat area, or "T-Distance," in front of and behind the guardrail. According to Hill, to create the required T-Distance behind the

---

[1] Appellants also sued four contractors hired in connection with the highway improvement contract.

[2] The trial court previously granted partial summary judgment in favor of the Department, finding appellants failed to comply with the ante litem notice requirements of OCGA § 50-21-26. We reversed in *Delson v. Dept. of Transp.*, 245 Ga. App. 100 (537 SE2d 381) (2000).

guardrail, it was necessary to bring in "fill" that could be used to create a "bench" and extend the shoulder.

Hill claimed that the slope of the median at its juncture with the shoulder was "far in excess" of what is allowed under the Department's standards and those of the American Association of State Highway and Transportation Officials ("AASHTO"). Specifically, Hill testified that the slope deviated from Department Standard 4051, which states that the slope behind the area where fill is added should match the slope of the pre-existing median. Hill measured the upper portion of the median slope and found a slope ratio of 3:1 or 2.5:1.[3] Hill claimed that the slope ratio should have been 4:1 or greater. Hill testified that the steep slope created a ramping effect.

Hill admitted, however, that Standard 4051 does not give an exact definition of the acceptable median slope. Rather, the standard provides that the new slope should be consistent with the pre-existing slope. Hill admitted that he did not measure the median slope during the highway improvement project and that he did not have any measurements of the pre-existing slope.

The Department tendered Maurice Bronstad as an expert in engineering and design standards. Bronstad took measurements across the median to determine its general slope characteristics. Based on these measurements, Bronstad testified that the median was within the preferred slope combinations under AASHTO standards. Bronstad also testified that the steepest acceptable slope along I-75 North would be between 3:1 to 2:1. Further, Bronstad testified that he did not measure or observe any significant change in the slope on the northbound side, and in pictures he reviewed of the collision scene, Bronstad saw no evidence of change in slope.

Finally, Bronstad explained the significance of the concept of a "clear zone" in roadside safety. A clear zone is a recovery zone for out of control vehicles. Bronstad testified that at the accident scene, a clear zone of 30 to 34 feet is required and that the available clear zone is over 50 feet. Bronstad stated that the back of the guardrail and the median slope on the I-75 North side were outside the clear zone.

In the face of conflicting expert testimony, it was the province of the jury to decide which expert, if either, to credit. *Byrd v. Med. Center of Central Ga.*, 258 Ga. App. 286, 291 (2) (574 SE2d 326) (2002) (in medical malpractice action, jury could have rejected one or both of competing standards of care proposed by experts).

---

[3] The slope ratio refers to the amount of vertical rise or drop that occurs over a given horizontal distance. For example, a 10:1 ratio means that for every ten feet there is a vertical rise or drop of one foot.

(b) We also disagree with appellants' argument that the jury could not have found that Crisanto Delson committed unforeseeable acts of negligence which constituted the sole proximate cause of the collision.

As an initial matter, the evidence was in conflict as to whether any causal relationship, remote or proximate, existed between the alleged bench slope Hill described and the collision. Appellants offered the testimony of accident reconstruction expert, Danny Doyle, who created an animation purporting to show that the Delson vehicle would not have launched over the guardrail if the bench slope were removed. Doyle, however, was contacted about the case and first visited the accident site in August 2006. He admitted that he had never before been called upon to reconstruct an accident 11 years after it occurred. He also conceded that much data was missing from his reconstruction. Finally, Doyle admitted that his animation showed a T-Distance behind the guardrail of eight feet but the actual distance is four feet.

Appellants' other expert, Hill, stated that he did not have enough information to reconstruct the accident. Bronstad likewise testified that he did not think it was possible to reconstruct the accident using the data available. Bronstad further opined that the guardrail, not the alleged bench slope, launched the vehicle into the air.

Even if the jury believed there was a causal connection between an alleged bench slope and the collision, the jury could have found that the Department was not liable because Crisanto Delson's negligence was an unforeseeable intervening cause of the accident. See *Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683, 686-687 (2) (572 SE2d 533) (2002). Eyewitness testimony that the Delson vehicle veered off the road for no apparent reason under good driving conditions would allow the jury to infer negligence. The testimony of appellants' own experts, among other evidence, would authorize the jury to conclude that the collision was unforeseeable. Doyle admitted that he had never seen a collision like the one involving the Delsons' vehicle. Hill admitted that he had not conducted and could not recall any studies regarding ramping effects and impacts with rear guardrails.

2. We reject appellants' enumerations of error relating to the trial court's jury instructions.

(a) Appellants claim that the trial court erred by failing to give the jury one of two instructions they proposed regarding intervening acts of negligence.[4] Appellants argue that in the absence of one of

---

[4] The first charge stated: "If the original negligent actor reasonably could have antici-

their proposed charges, the trial court failed to accurately and completely instruct the jury on proximate cause and the foreseeability of intervening acts. We disagree.

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge[s] contained error." (Citations and punctuation omitted.) *Hancock v. Bryan County Bd. of Ed.*, 240 Ga. App. 622, 628 (522 SE2d 661) (1999); *Jiles v. Peters*, 216 Ga. App. 288, 289 (2) (454 SE2d 178) (1995). In addition, "where the charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion of the charge may not be as clear and precise as could be desired, [we] will not disturb a verdict amply authorized by the evidence. [Cit.]" *Johnston v. Woody*, 148 Ga. App. 152, 155 (3) (250 SE2d 873) (1978) (trial court's failure to give requested instructions on intervening cause and brake failure not erroneous).

Applying these principles, we cannot conclude that the trial court erred by failing to give the requested charges. Drawing from the Council of Superior Court Judges of Georgia's pattern instruction relating to: "Torts; Proximate Cause; Foreseeability; Natural and Probable Consequence; Intervening Cause Rules (Chain Reaction Situation)" (see Suggested Pattern Jury Instructions, Vol. I: Civil Cases, § 60.202), the trial court instructed the jury, in relevant part, as follows:

> A Defendant may be held liable for an injury when the Defendant commits a negligent act that puts other forces in motion or operation resulting in the injury when such other forces are the natural and probable result of the act that the Defendant committed and that reasonably should have been foreseen by Defendant. When injuries could not be reasonably have [sic] foreseen as the natural, reasonable, and probable result of the original negligent act, if any, then there can be no recovery.

Although appellants' proposed instructions might have rendered the jury charge more complete and precise, we find that the charge as a whole was adequate to advise the jury that one of the touchstones of its determination of the Department's liability was foreseeability. In light of the charge, the jury would have understood that, notwithstanding any negligence on the part of Crisanto Delson,

---

pated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original negligent actor for liability for the consequences resulting from the original negligent act." The other quoted directly from *Williams v. Grier*, 196 Ga. 327 (26 SE2d 698) (1943).

it could find the Department liable if the Delsons' collision was foreseeable. In this respect, this case is distinguishable from *Pearson v. Tippman Pneumatics*, 281 Ga. 740 (642 SE2d 691) (2007), upon which appellants rely. There, the Supreme Court of Georgia held that the trial court's charge was erroneous because it incorrectly advised the jury that, regardless of whether the third party's intervening negligence was foreseeable, the defendant could not be liable if the third party's negligence was sufficient, of itself, to cause the plaintiff's injuries. Id. at 744 (3). No such error occurred here.

(b) The trial court instructed the jury that the Department was contending that Crisanto Delson was negligent and violated certain Uniform Rules of the Road, which constituted negligence per se. The trial court further instructed the jury that if it found that Crisanto Delson's negligence was the sole proximate cause of the accident, appellants could not recover. Appellants contend that these instructions were erroneous because no evidence supported the conclusion that Crisanto Delson's negligence was the sole proximate cause of the collision. In view of the evidence discussed in Division 1 (b), supra, we disagree.

(c) Finally, appellants argue that the trial court erred in charging the jury on principles of concurrent negligence because the evidence showed that the Department's negligence was prior to, not concurrent with, Crisanto Delson's negligence. We disagree.

Under Georgia law, two or more tortfeasors may be found to have committed "concurrent" acts of negligence whether or not they acted in concert or their acts of negligence occurred at the same time:

> In this State . . . it is not necessary that there be intentional concert or simultaneous action among those sought to be held jointly liable for injury. All that is required is that negligent acts, although separate and independent, be found to have combined naturally and directly to produce a single injury.

(Citations and punctuation omitted.) *Gilson v. Mitchell*, 131 Ga. App. 321, 327 (205 SE2d 421) (1974), aff'd, *Mitchell v. Gilson*, 233 Ga. 453 (211 SE2d 744) (1975); see also *Walker v. Giles*, 276 Ga. App. 632, 643, n. 9 (624 SE2d 191) (2005). The jury heard evidence that would have authorized it to conclude that the alleged independent negligent acts of the Department and Crisanto Delson combined to cause the collision and resulting injuries. As such, the trial court's charge on concurrent negligence was proper.

For the reasons set forth above, we affirm the trial court's denial of appellants' motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2008 —
RECONSIDERATION DENIED DECEMBER 4, 2008.

Weinstock & Scavo, Michael Weinstock, for appellants.
Thurbert E. Baker, Attorney General, Davis, Pickren & Seydel, Paul R. Jordan, Arnall, Golden & Gregory, Shannon L. Drake, for appellee.